Considered by STERNHAGEN, LANSDON, and ARUNDELL.

---

BADGER TALKING MACHINE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10239. Promulgated October 3, 1927.

The petitioner was affiliated with the Interstate Music Corporation from January 1, to November 30, 1920.

*Chester A. Gwinn, Esq.,* for the petitioner.
*A. H. Fast, Esq.,* for the respondent.

In this proceeding the petitioner seeks a redetermination of its income and profits-tax liability for the calendar year 1920 for which the Commissioner determined a deficiency in the sum of $7,389.31.

The petitioner has alleged three errors on the part of the Commissioner, two of which have been eliminated by stipulation, leaving at issue the refusal of the Commissioner to compute the tax liability of the petitioner and the Interstate Music Corporation as affiliated corporations pursuant to the provisions of section 240 of the Revenue Act of 1918.

FINDINGS OF FACT.

The petitioner is a corporation organized under the laws of the State of Wisconsin in the year 1914, with its principal office in Milwaukee. The petitioner is engaged in the distribution of Victor talking machines. Its authorized capital stock upon organization was $50,000, divided into 1,000 shares of common stock of $50 par value each. From the date of incorporation to the present time George F. Ruez, H. A. Goldsmith, and S. Goldsmith have been its principal stockholders and have at all times been its managing officers and directors. In the sale of Victor talking machines the petitioner gave exclusive territorial rights. Seeing the possibility of the further development of the trade in talking machine accessories in these territories, the Record Needle & Manufacturing Co. was incorporated under the laws of the State of Wisconsin in November, 1917. The

purpose of this corporation was the manufacturing and development of trade in accessories, with persons other than those who handled the Victor products. Upon organization 950 shares, par value $50 each, of the authorized 1,500 were issued. Ruez received 500, H. A. Goldsmith 250, and S. Goldsmith 200. In November, 1919, at a special meeting, it was voted to amend the articles of incorporation so as to increase the authorized capital stock to $100,000 par value, divided into 4,000 shares, each having a par value of $25, and to change the name to "Interstate Music Corporation."

On January 1, 1920, the outstanding capital stock of the petitioner amounted to $100,000 represented by 2,000 shares, which were held as follows:

|  | Shares. |
|---|---|
| George F. Ruez and Esther N. Ruez (his wife) | 999 |
| Chet Goff | 1 |
| H. A. and S. Goldsmith | 972 |
| J. Slottow | 28 |
| Total | 2,000 |

On the same date there was outstanding capital stock of the Interstate Music Corporation $60,000 par value represented by 2,400 shares of $25 each, of which the stockholders of the petitioner owned the following shares:

|  | Shares | Per cent |
|---|---|---|
| George F. Ruez and Esther N. Ruez (his wife) | 780 | 32 |
| H. A. Goldsmith | 362 | 15 |
| S. Goldsmith | 362 | 15 |
| Chester Goff | 100 | 4 |
| J. Slottow | 20 | .8 |
| Total | 1,624 | 66.8 |

Ruez and the two Goldsmiths were the officers and directors of the petitioner from the date of its incorporation. When the Record Needle & Manufacturing Co. was organized they became its officers and directors. They have served as officers and directed the policy of both corporations since the date of their organization. Ruez, who was the president of the Record Needle & Manufacturing Co. at the time of its organization, later resigned from this position and became treasurer, and was succeeded as president by an employee of the petitioner named Zinke.

The two concerns occupied different floors of the same building; had common storage space and kept separate books of account, but the corporate records of the Record Needle & Manufacturing Co. and its successor, the Interstate Music Corporation, were kept in the safe of the petitioner. Each had separate salesman, who sold, as a

matter of courtesy, without charge, the goods of the other. During the period from January 1 to November 30, 1920, the stock of the Interstate Music Corporation was held as follows:

|  | Per cent. |
|---|---|
| Stockholders of the petitioner | 66. 8 |
| Relative of stockholders of petitioner | 15. 0 |
| Business associates of stockholders | 11. 9 |
| Friends of stockholders of petitioner | 5. 3 |
| Quiescent stockholders, living at a distance | 1. 0 |
| Total | 100. 0 |

None of the stock of the Record Needle Co. or the Interstate Music Corporation was ever offered at general sale. The minority stockholders consisted of a group that had been associated with Ruez and the two Goldsmiths in several other ventures and allowed them to conduct the business without interference. There is no record of any stockholders' meetings except the special meeting which was held to increase the capital and change the name of the corporation.

In 1919, the business of the Record Needle & Manufacturing Co. had so declined that it had sustained a loss amounting to approximately one half of its capital. In November of 1919 the special meeting above referred to was called for the purpose of increasing the capital stock and changing the corporate name. At the date of the meeting there were 950 shares of stock outstanding, of which 572 were owned by the stockholders of the petitioner. The Wisconsin Statute, section 180.07, requires the acquiescence of two thirds of the outstanding stock to make such changes. At the meeting 667 shares were represented by the owners, 202 by proxy and 81 were not represented. The name of the corporation was changed to Interstate Music Corporation and the capital stock was increased to $100,000. One share of $25 par value stock was to be exchanged for the outstanding stock of $50 par value and the right to subscribe for an additional share of $25. Ruez and the two Goldsmiths agreed to and did subscribe for all the stock not taken by the former stockholders under these rights. In order to aid the corporation the petitioner turned over to it without pay a valuable contract for the sale of Rythmodic Player Rolls. Subsequently this contract was canceled, depriving the Interstate Music Corporation of its principal business. The petitioner then proposed to exchange its 6 per cent preferred stock for the stock of the Interstate Music Corporation par for par. This proposal was accepted and on December 1, 1920, the petitioner acquired all the stock of the Interstate Music Corporation.

It has been stipulated that the net loss of the Interstate Music Corporation for the calendar year 1920 was $10,874.80.

OPINION.

GREEN: The petitioner here is seeking an affiliation for the first eleven months of the year 1920 under the provisions of section 240 (b) of the Revenue Act of 1918, which reads as follows:

(b) For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests.

The facts here show that the petitioner and the Interstate Music Corporation had, (1) common interest, and purpose of joint success, (2) the same officers and interlocking directors, (3) minority stock held by either persons related by blood or marriage or by employees, business associates and friends, (4) business harmony evidenced by friendly minority stockholders, (5) control exercised by proxies, (6) and that the owners of the stock of the petitioner owned 66.8 per cent of the stock of the Interstate Music Corporation.

We believe from the above state of facts that all the elements of affiliation are present and that any other conclusion would be contrary to the meaning of the statute.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by STERNHAGEN, LANSDON, and ARUNDELL.